United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 03-20884

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

FRANK LAFAYETTE BIRD, JR,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before GARZA, DeMOSS and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In *United States v. Bird* ("*Bird I*") this Court held that the Freedom of Access to Clinic

Entrances Act (FACE) is a valid exercise of Congress's authority under the Commerce Clause. 124

F.3d 667, 678 (5th Cir. 1997). Notwithstanding that holding, the district court in the present case

held that under *United States v. Morrison*, 529 U.S. 598 (2000) "passage of [the FACE Act] was

beyond Congress' Commerce Clause authority." *United States v. Bird*, 279 F. Supp. 2d 827, 838

(S.D. Tex. 2003).

We do not find that the Supreme Court's decision in *Morrison* materially affects our holding in *Bird I*.[1] Our decision in that case is therefore binding.[2] *Cf. United States v. Pettigrew*, 77 F.3d 1500, 1511 n.1 (5th Cir. 1996) ("While. . .one panel of this Court is generally powerless to overrule the previous decision of another panel . . . , an exception to this rule arises when there has been an intervening decision by the United States Supreme Court overriding the earlier decision.").

Accordingly, we VACATE the district court's order and REMAND for further proceedings not inconsistent with this opinion.

---

[1] We note that this conclusion accords with the post-*Morrison* decisions of our sister circuits. *See United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000), *cert. denied* 523 U.S. 971 (2001); *Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002), *cert. denied*, 537 U.S. 1172 (2003).

[2] This Court's decision in *Bird I* involved an application of 18 U.S.C. § 248(a)(1), the subsection of FACE addressing acts of violence and intimidation. The present appeal involves an application of 18 U.S.C. § 248(a)(3), the subsection of FACE addressing destruction of and damage to property. Neither the parties nor the district court, however, suggest any variance in Commerce Clause analysis between these two subsections.

DeMOSS, Circuit Judge, dissenting:

In March 2003, Bird drove a van through the front door of a Planned Parenthood facility in Houston, Texas. A federal grand jury indicted Bird on one count of violating 18 U.S.C. § 248(a) and (b)(2). Bird filed a pretrial motion to dismiss the indictment, contending that Congress impermissibly exceeded its power under the Commerce Clause when it enacted FACE and citing the Supreme Court's decision in United States v. Morrison, 529 U.S. 598 (2000), as effecting a change in the Commerce Clause analysis that now renders moot our previous decision in United States v. Bird, 124 F.3d 667 (5th Cir. 1997) ("Bird I"). The district court agreed and granted Bird's motion to dismiss the indictment, concluding that its ruling was in line with the Supreme Court's decisions in both United States v. Lopez, 514 U.S. 549 (1995), and Morrison.

On appeal, the Government argues the district court incorrectly concluded that the Supreme Court's decision in Morrison preempted this Court's previous decision in Bird I.[3] Meanwhile, Bird maintains that Morrison clearly rejected the "national commercial market" theory of aggregation espoused in Bird I and argued here by the Government. The majority has concluded that Morrison does not "materially affect[]" our decision in Bird I.

---

[3]While the Government may be correct in its argument that each circuit court to have addressed this issue has upheld FACE as a constitutional exercise of Congress's powers under the Commerce Clause, it is critical to point out that only two circuits have engaged in such an analysis post-Morrison. See Norton v. Ashcroft, 298 F.3d 547, 556 (6th Cir. 2002); United States v. Gregg, 226 F.3d 253, 261-67 (3d Cir. 2000).

As a preliminary matter, I incorporate by reference here the discussion and reasons I offered in my dissent in Bird I. 124 F.3d at 685-92. Because I believe the holding in Morrison dictates even more clearly that Congress exceeded its Commerce Clause authority when it enacted FACE, I again respectfully dissent.

Just as Lopez, the then most recent Supreme Court exegesis on the bounds of Congress's Commerce Clause authority, guided this court in Bird I, so too Morrison charts our course here.

## I.   The regulated activity is intrastate and noncommercial.

The Supreme Court's decision in Lopez set forth three broad categories under which Congress could regulate intrastate activities through its Commerce Clause powers. 514 U.S. at 558. The third category, and the one at issue here, provides that Congress can regulate certain intrastate activities that have a substantial effect on interstate commerce. Id. at 558-59. In Lopez, the statute made the subject of the Court's review was the Gun-Free School Zones Act of 1990 ("GSA"), a criminal statute that made it a federal offense to knowingly possess a firearm in a school zone. See 18 U.S.C. § 922(q)(1)(A) (1994). The Court determined that the GSA was "a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." Id. at 561. Accordingly, the Lopez Court concluded that the GSA was unconstitutional in part because it regulated an activity that was noneconomic and therefore could not be justified under the third

-4-

prong of Congress's Commerce Clause authority.  Id. at 551, 560-61, (noting that "[e]ven Wickard [v. Filburn, 317 U.S. 111 (1942)], which is perhaps the most far reaching example of Commerce Clause authority over intrastate activity, involved economic activity in a way that the possession of a gun in a school zone does not"), 566.

Then, in Morrison, the Supreme Court again was faced with a federal statute, the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981, that sought to regulate criminal activity, this time in the form of gender-motivated violence.  The Court first observed that "a fair reading of Lopez shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case." 529 U.S. at 610 (emphasis added).  The Morrison Court further explicated that requiring the regulation to be of an economic activity is essential to the limitations set forth in the Commerce Clause, noting that "Lopez's review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." Id. at 611 (emphasis added) (citing Lopez, 514 U.S. at 559-60)).  Using the lack of an economic element in the activity being regulated as partial justification, the Court subsequently struck down VAWA as an impermissible exercise of Congress's Commerce Clause. Morrison, 529 U.S. at 617-18.

As in Lopez and Morrison, the criminal activity at issue here, the intentional damaging and destroying of a facility that provides reproductive health services, is neither an economic nor a commercial activity. To so conclude is not a novel interpretation of the statute or the underlying conduct, as the question of how to define the activity proscribed by FACE was previously answered by this court in Bird I. This court expressly stated that FACE is "a federal criminal statute regulating intrastate, noncommercial conduct."[4] 124 F.3d at 675. Therefore, the analysis here embraces the binding determination that the regulated conduct in this case is noncommercial in nature.

The Court in Morrison further suggested that Congress could not, in the absence of a regulated activity which is economic or commercial, simply exercise a general police power, stating:

> The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States. Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.

529 U.S. at 618 (internal citation omitted). Moreover, as the

---

[4] In sustaining the statute's constitutionality, however, the court reasoned that Lopez could not be read as requiring that the regulated activity be, at a minimum, commercial. 124 F.3d at 675. The Bird I majority also observed that Congress could have ensured that FACE reached only those activities which substantially affect interstate commerce either by including a jurisdictional element or through its own legislative findings. 124 F.3d at 675. It was conceded that FACE did not contain a jurisdictional element; thus, the Bird I majority premised its conclusion that FACE was constitutional based on the congressional findings that abortion-related services were part of a "national commercial market." Id. at 678-82.

Court in <u>Lopez</u> noted: "Under our federal system, the 'States possess primary authority for defining and enforcing the criminal law.'" 514 U.S. at 561 n.3 (internal quotation marks and citations omitted). Congress itself has noted that state statutes, including criminal trespass, criminal contempt, disorderly conduct, resisting arrest, and unlawful assembly are more than adequate to address the activities sought to be regulated by FACE. <u>See</u> H.R. REP. NO. 103-306, at 22 (1993), <u>reprinted in</u> 1994 U.S.C.C.A.N. 699, 717.

Because Congress does not have a general police power, it surely cannot have the authority to define as criminal conduct under federal law <u>private</u> acts that are intended to interfere with another person's exercise of some constitutional right, whether that right is to be free from gender-based violence as in VAWA or to choose to access reproductive health services, such as abortion, as in FACE.[5] Purely criminal activities that are not premised in economic or commercial contexts are subject to an entirely different scheme of congressional regulations, none of which is justifiable under the Commerce Clause.

## II. Morrison expressly precludes the aggregation of noncommercial, criminal activity.

Having concluded that the criminal, intrastate activity proscribed by FACE is neither commercial nor economic in nature,

___

[5] While the Fourteenth Amendment prohibits states from denying individuals constitutional rights, such protection does not extend to acts of private parties or entities. <u>Civil Rights Cases</u>, 109 U.S. 3, 20-26 (1883).

this analysis focuses on how the Supreme Court's decision in Morrison expressly rejects the contention that such activity can be aggregated in order to create a substantial effect on interstate commerce.

Morrison refutes the concept of an aggregate effect on a national market when the conduct proscribed is violent criminal conduct. 529 U.S. at 615-19. As a preliminary matter, the Commerce Clause may not reach noneconomic activity that only affects commerce through a "but-for" causal chain. Id. at 613. The Morrison Court explained:

> The reasoning that petitioners advance seeks to follow the but-for causal chain from the initial occurrence of violent crime (the suppression of which has always been the prime object of the States' police power) to every attenuated effect upon interstate commerce. If accepted, petitioners' reasoning would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption. Indeed, if Congress may regulate gender-motivated violence, it would be able to regulate murder or any other type of violence since gender-motivated violence, as a subset of all violent crime, is certain to have lesser economic impacts than the larger class of which it is a part.

Id. at 615.

While Bird I concluded that Wickard, reaffirmed by Lopez, permits the aggregation of intrastate, noncommercial activity, the Supreme Court's more recent decision in Morrison expressly forecloses any such aggregation. Specifically, the Supreme Court announced: "We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that

-8-

conduct's aggregate effect on interstate commerce. The Constitution requires a distinction between what is truly national and what is truly local." Id. at 617-18 (citing Lopez, 514 U.S. at 568). This holding in Morrison clearly undermines the reasoning employed by Bird I, in which this court determined that under Wickard's aggregation theory, "there can be no question that Congress is able to regulate noncommercial, intrastate activity that substantially affects interstate commerce." 124 F.3d at 676. It follows, therefore, that Morrison's limitation of the aggregation principle, necessarily compels a finding that Congress exceeded its Commerce Clause authority when it enacted FACE, thus eliminating Bird I's precedential value as it relates to this concept.

## CONCLUSION

In sum, FACE, as interpreted now in light of Morrison, represents another effort by Congress to dismantle the federalist foundation upon which this country was designed to function. The regulation of purely intrastate, noneconomic, noncommercial criminal activity that is not essential to a broader regulatory scheme surely cannot be within Congress's purview. To uphold the constitutionality of this statute in the face of the teachings provided by Lopez and Morrison not only ignores the precedents established by both of these decisions, but also essentially grants to Congress the unfettered authority to govern in areas the Framers contemplated would be regulated only by the states. Because I believe the Constitution and the Supreme Court disallow the result

-9-

reached by the majority's holding, I respectfully dissent.